IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GERARD DAVID McCREE,          )
                             )
        Plaintiff,            )
                             )
v.                           )          CIVIL ACTION NO. 2:03-CV-774-D
                        )               WO
                             )
D. T. MARSHALL, et al.,       )
                             )
        Defendants.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Gerard David McCree ["McCree"], a state inmate, contends that on June 30, 2003 during his confinement at the Montgomery County Detention Facility the defendants acted with deliberate indifference to his safety by failing to protect him from attack by another inmate. The plaintiff names D. T. Marshall, the sheriff of Montgomery County, Gina M. Savage, director of the Montgomery County Detention Facility, and Willie Williams and James Thrift, correctional officers at the facility, as defendants in this cause of action.

The defendants filed special reports and supporting evidentiary materials addressing the plaintiff's claims for relief. Pursuant to an order entered herein, the court deems it appropriate to treat these reports as a motion for summary judgment. *See Order of December 10, 2003 - Court Doc. No. 26.* Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the

evidentiary materials filed in support thereof, and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. FACTS

On December 14, 2001, McCree entered the Montgomery County Detention Facility on a charge of capital murder for "shooting Travis Moore with a firearm fired or otherwise used from outside a vehicle while said Travis Moore was inside said motor vehicle in violation of Section 13A-5-40(a)(17) of the Code of Alabama . . ." *July 12, 2005 Response of the Plaintiff /Court Document Number 72* at *Exhibit 3 - Arraignment Transcript* at 8. The Alabama Department of Corrections obtained custody of the plaintiff on December 14, 2001.

On April 15, 2002, McCree returned to the Montgomery County Detention Facility for a court appearance related to the capital murder charge. On April 17, 2002, correctional officers placed McCree on the elevator under escort for transport to visitation. During a stop, inmate Joe Moore, the brother of McCree's murder victim, entered the elevator and a physical altercation instantly ensued between Moore and McCree. Officers immediately separated the inmates. McCree received no injuries during this altercation while inmate Moore suffered an injury to his right eye that required emergency medial treatment. Jail personnel placed McCree in a maximum security cell block which required his being locked

2

down for twenty-three hours each day until his subsequent transfer to the custody of the Alabama Department of Corrections upon the revocation of his probation. *See Affidavit of Gerard David McCree - Court Doc. No. 66* at 8. During McCree's time in lock down, no further incidents occurred with inmate Moore.

On July 18, 2002, correctional officials transported McCree to the Montgomery County Circuit Court for arraignment. *July 12, 2005 Response of the Plaintiff/Court Document No. 72* at *Exhibit 3 - Arraignment Transcript* at 13. During his arraignment, McCree informed Judge Tracy McCooey that he had experienced problems with other inmates during his previous confinement in the Montgomery County Detention Facility. Erroneously believing that McCree was set for return to the county facility, Judge McCooey initially advised the sheriff to separate McCree from inmate Moore. *Id.* at 12-13. However, the parties informed Judge McCooey that upon completion of his arraignment McCree would immediately be returned to the custody of the Alabama Department of Corrections and transported to a state correctional facility. *Id.* at 13. Consequently, Judge McCooey ordered to "get [McCree] shipped out" to the state system "then they'll be separated because one will be here and one will be there." *Id.* at 14. After his arraignment, officials transported McCree directly to a state correctional facility.

On May 29, 2003, McCree returned to the Montgomery County Detention Facility from the state prison system for a court appearance on June 5, 2003. At this time, McCree

signed statements advising jail personnel that he had no enemies at the county detention facility. *Defendants' November 12, 2003 Supplemental Special Report - Exhibit R* and *Defendants' December 1, 2003 Second Supplemental Special Report - Exhibit V*. These documents also demonstrate that McCree did not request placement in protective custody. Although McCree asserts that he did not sign these statements, a review of the pleadings and evidentiary materials before this court establishes that the signatures contained on the statements match the signatures of the plaintiff contained in the pleadings filed with this court. Nevertheless, based on McCree's numerous altercations with other inmates and his behavior during his prior stints of confinement, jail officials placed him in the isolation unit, a maximum security area of the detention facility, which required that he remain in his cell for twenty-three hours each day and necessitated escort by a correctional officer during transportation from his cell. *See Affidavit of Gerard David McCree - Court Doc. No. 66* at 8; *Affidavit of Gerard David McCree filed on October 16, 2003* at 3; *Defendants' Exhibit T - November 25, 2003 Affidavit of Gina M. Savage* at 2.

On June 30, 2003, a nurse contacted defendant Thrift and requested that the plaintiff be brought to the medical unit for a check of his blood pressure. Due to the plaintiff's security level, Thrift instructed defendant Williams to escort McCree to the jail's medical unit for evaluation. At this time neither Thrift nor Williams knew or should have known that inmate Moore was in a holding cell in the area of the medical unit. When Williams and

McCree arrived at the medical unit, inmate Moore exited the holding cell and began hitting McCree with his fists.  The inmates were separated and officers referred McCree for a body chart.  The plaintiff "denie[d] any medical problems" and "[d]id not wish to be seen by nurses."  *Defendants' Exhibit M - June 30, 2003 Injury/Body Chart for Gerard McCree - First Entry*.  Officers then placed McCree in the inmate visitation booth on 2-North, whereupon he kicked out the window of the visitation booth, suffering a cut on the lower portion of his right leg.  Due to this injury, jail staff transported McCree to the medical unit for treatment.  Upon examination by a nurse, McCree "voiced having glass in Rt ⇓ leg."  *Id. - Second Entry*.  The nurse cleaned the injured area of plaintiff's leg and noted a "superficial laceration."  *Id.*  However, McCree advised the nurse that "he didn't want no one to take care of his leg.  Just leave it alone."  *Id.*  Jail officials immediately implemented McCree's transfer to the Alabama Department of Corrections.

The plaintiff alleges that defendants Williams and Thrift violated his constitutional rights when they failed to protect him from attack by inmate Moore on June 30, 2003.  *Plaintiff's Complaint* at 2.  He asserts that defendants Marshall and Savage are liable in this cause of action for their failure to adequately train and supervise employees of the Montgomery County Detention Facility thereby resulting in the June 30, 2003 altercation with inmate Moore.  *Plaintiff's October 16, 2003 Amendment to the Complaint* at 2.  The defendants deny that they acted with deliberate indifference to McCree's safety.  In

support of this assertion, the defendants maintain that they had no knowledge of any risk of danger to McCree nor any reason to believe McCree faced a substantial risk of harm during his transfer to the medical unit while being escorted by a correctional officer.

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence which would be admissible at trial supporting his constitutional claim. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the

6

plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, the plaintiff has failed, after being afforded an opportunity to do so, to go beyond the pleadings and present evidence necessary to establish that there is a genuine issue of material fact in order to preclude summary judgment.

### III. DISCUSSION

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate

faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety."  *Id.* at 834.   A constitutional violation occurs only when a plaintiff establishes the existence of  "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'...."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, the plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a ' "sufficiently culpable state of mind." ' " *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... [T]he prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

The evidentiary materials submitted by the defendants refute the plaintiff's

conclusory allegation that correctional officers at the Montgomery County Detention Facility are inadequately trained and improperly supervised. These documents also establish that McCree did not identify any enemies upon his transfer to the Montgomery County Detention Facility in May of 2003, nor did he seek placement in protective custody at this time. The facts further demonstrate that the defendants, based on security concerns deriving from the plaintiff's behavior during his prior confinement in their custody, housed McCree in the isolation unit of the detention facility, where he remained confined for twenty-three hours each day, separated from other inmates. Additionally, any time McCree exited his cell, jail officials implemented security precautions, including McCree's being escorted by a correctional officer. Specifically, at the time of the June 30, 2003 attack made the basis of the instant complaint, McCree was being escorted to the medical unit by defendant Williams. Although over a year prior to this attack McCree and Moore had been involved in a physical altercation, neither defendant Thrift nor defendant Williams had knowledge of this prior altercation. Additionally, the defendants had no knowledge of inmate Moore's presence in a holding cell in the medical unit on June 30, 2003, nor did they have any reason to believe that inmate Moore would attempt to harm McCree while a correctional officer accompanied McCree. The evidence before this court establishes that the defendants acted in a reasonable manner when addressing the security concerns associated with McCree's confinement in the Montgomery County Detention Facility.

9

A thorough review of all the documents filed in this case demonstrates that Moore's attack on McCree constituted a random act that could not be anticipated nor prevented by the defendants. The record is completely devoid of any evidence that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to McCree, that the defendants actually drew this inference and thereafter ignored this risk. The plaintiff has therefore failed to establish the requisite element of subjective awareness on the part of the defendants. *Carter*, 352 F.3d at 1350. While it is unfortunate that McCree suffered an assault at the hands of a fellow inmate, the record fails to demonstrate that the incident occurred due to any deliberate indifference or reckless disregard by the defendants with respect to the safety of the plaintiff. Consequently, summary judgment is due to be granted in favor of the defendants. *See Celotex v. Catrett, supra.*

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be granted.

2. Judgment be entered in favor of the defendants.

3. The costs of this proceeding be taxed against the plaintiff.

4. This case be dismissed with prejudice.

It is further

ORDERED that on or before November 7, 2005 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

DONE, this 24th day of October, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

11

12